## WINK GAS CO. v. HUSKEY.
### No. 2583.

Court of Civil Appeals of Texas. El Paso. Oct. 22, 1931.

L. A. Dale and Rutledge Isaacks, both of Pecos, for appellant.

A. T. Folsom, of Wink, for appellee.

PELPHREY, C. J.

During the latter part of the year 1928, appellant, who was engaged in furnishing gas to the residents of Wink, Tex., and that vicinity, installed a gas meter for a rooming house in the town of Wink. Later appellee became the owner of the rooming house, and made, on or about January 21, 1929, an application to appellant for gas to be used therein. In October of the same year a restaurant owned by appellee was also connected with the meter. In the latter part of February, 1930, an employee of appellant, when he went to read the meter, found an "outlaw" pipe that ran direct from the mains to appellee's place of business, carrying gas which did not pass through the meter. This pipe was immediately removed, and in March the gas bill of appellee was $21.25, whereas it had only been $14.90 in February, $13.25 in January, and $9.05 in December, 1929. Appellee claimed that the meter was defective and was registering more than the amount of gas used by her. She refused to pay the gas bill for March, and on April 16, 1930, appellant took out the meter and cut off the gas supply from appellee's place of business.

On August 11, 1930, appellee filed this suit against appellant in the justice court of precinct No. 2, of Winkler county. In her suit she sought to recover $22 being the difference between $30 she had deposited with appellant and $8 which she claimed was the amount of gas used by her in March; $100 for loss of profits caused by appellant's action in cutting off the gas from her restaurant; and $75 exemplary damages.

Appellant demurred to appellee's cause of action, and specially excepted thereto, generally denied all her allegations, and prayed that the sum of $198, being the value of gas which went through the "outlaw" pipe used by appellee and not paid for by her, be offset against any amount which might be found to be due her. Appellee filed a supplemental

statement, in answer to appellant's answer and cross-action, setting out more specifically her alleged damages, and further alleged that appellant had never made claim upon her for the amount of gas which had gone through the "outlaw" pipe, though she had offered to pay it for same.

Judgment was rendered in justice's court against appellant for the sum of $98.50, and it duly perfected its appeal to the county court of Winkler county.

Upon a trial before a jury in the county court, a verdict was rendered fixing appellee's damages at the sum of $109.50, and judgment rendered therefor. From that judgment this appeal has been prosecuted.

### Opinion.

The jury, in response to special issues, found: (1) That the meter, during the month of March, 1930, registered an amount of gas in excess of that actually consumed by appellee; (2) that the bill of $21.25 for March was excessive; (3) that a reasonable and proper bill for that month would have been $14; (4) that appellant wrongfully removed the meter and discontinued supplying gas to appellee; (5) that appellee's loss of business by reason of such discontinuance of gas service was $75; (6) that $25 would reasonably compensate her for injury and inconvenience suffered by her, aside from the loss in her restaurant business; (7) that the line direct from the field which did not go through the meter was used by appellee for 30 days; (8) that the value of the gas so used by appellee was $10; (9) that the meter was defective from the date of its installation; and (10) that the value of the gas registered by the meter and not used by appellee was $10.

Appellant seeks a reversal of the judgment against it on the following grounds: That there is no evidence to support the jury's finding that the proper bill for the month of March was $14; that, even though such finding was correct, the jury having found that appellee was indebted to appellant in the sum of $10 for gas used and not registered by the meter, which amount exceeded the difference between the amount of the bill rendered and the amount which should have been charged, appellant was justified in discontinuing the service of gas to appellee; that no such contractual relation existed between appellant and appellee as would authorize a recovery against appellant for loss of patronage to appellee's restaurant which resulted from appellant's failure to supply gas to her; and that the allowance of $25 for inconvenience to appellee by the jury was not sustained by the evidence, and too remote and speculative.

Appellee testified that she saw the hands on the meter going around very rapidly, and much faster than ordinary; that her bill for February was $14.90, for January $13.25, and for December, 1929, $9.05; that it was not nearly as cold in March as it had been during those months; and that she did not use as many heaters during March as she had been using.

■ While it is true that there was testimony that the meter, when tested, showed a maximum over registration of only 5 per cent., yet Mr. Wallace, a witness for appellant, testified that the registration of the meters was affected by the sulphur content of the gas and by the pressure; therefore the jury would not be limited by the testimony as to the tests made of this particular meter, but could take into consideration all the circumstances before them in reaching a conclusion as to the amount of the gas used by appellee during March.

The evidence, we think, was sufficient to sustain their finding that she used only $14 worth during that month.

■ Appellant further contends that, the jury having found that it had overcharged appellee in the sum of $7.25 for March, and having found that appellee had used $10 worth of gas through the "outlaw" pipe for which she was indebted to appellant, appellee was indebted to appellant for the difference between such amounts at the time her gas was cut off, and therefore appellant was justified in so doing and would not be liable for any damages suffered by appellee as a result of having her gas discontinued.

This position is, in our opinion, untenable. While it may be true that appellee was indebted to appellant for the gas which had passed through the "outlaw" pipe and was used by her, yet there had never been any bill rendered for such gas to appellee by appellant.

■ Appellant became aware of the presence of the pipe when its meter reader read the meter in the latter part of February, yet it rendered a bill to appellee for gas which it claimed she had used during the month of March, and did not include therein any charge for gas used by her prior to that month.

The record shows that appellant discontinued furnishing gas to appellee, not because she had failed to pay for gas used by her through the "outlaw" pipe, but for gas which their meter had erroneously registered as having been used by her in March.

We are of the opinion that appellant was not authorized in shutting off appellee's gas because she had not paid for gas used by her which was not included in the bill rendered to her. Randolph v. St. Joseph Gas Co. (Mo. App.) 250 S. W. 642.

■ We cannot agree with appellant's contention that it is not liable to appellee for damages resulting from loss of patronage to her business, because the evidence fails to show a contractual relation between the par-

ties in regard to furnishing gas for such business.

The evidence shows that appellee made application to appellant for gas, and that appellant required her to make a deposit of $30 to secure it for gas used by her. It also shows that appellant's agents had from time to time gone upon her premises to read her meter, and therefore must have known the use she was making of the gas furnished her. The fact that they required the amount of $30 as a deposit, which exceeded the amount of gas used by her in any one month, we think shows that appellant had notice at the time the application was made that she was engaged in business which required the use of more gas than would be used in the ordinary residence, and certainly the agents of appellant had full knowledge as to the purposes for which she was using the gas.

While the evidence is perhaps not as satisfactory as it might be on the question of the amount of damages to her business, yet it is well settled that loss of profits to an established business is a proper element of damages and are not subject to the charge that they are too remote and speculative to be recovered.

However, we must agree with appellant that the $25 damages allowed by the jury for inconvenience to appellee is too speculative to be allowed in a case such as the record here portrays.

The judgment for $25 allowed appellee as damages for her inconvenience is reversed, and judgment here rendered that as to such item appellee take nothing, and the judgment as to the other items is in all things affirmed.